**Harold A. JOHNSON, Plaintiff,**

v.

**OUTBACK STEAKHOUSE OF FLORIDA, INC. d/b/a Outback Steakhouse, Defendant.**

**No. 02–4086–RDR.**

United States District Court, D. Kansas.

April 27, 2004.

---

· Pantaleon Florez, Jr., Topeka, KS, for Plaintiff.

Brian A. Price, Emery K. Harlan, Gonzalez, Saggio & Harlan, LLP, Milwaukee, WI, Patricia E. Riley, Cynthia J. Sheppeard, Weathers & Riley, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination action where plaintiff alleges that he was discharged as a kitchen manager by defendant in violation of the provisions prohibiting race discrimination in 42 U.S.C. § 2000e and 42 U.S.C. § 1981. This case is now before the court upon defendant's motion for summary judgment.

Summary judgment based on admissions

■ Defendant makes two major arguments for summary judgment. Defendant's first argument is that summary judgment is warranted on the basis of admissions made by reason of plaintiff's failure to make timely responses to requests for admission. In an order dated September 15, 2003, this court held that the requests for admission would be deemed admitted.[1]

The court stated that whether plaintiff would be permitted to withdraw the admissions upon proper request would be decided at a later time.

In response to the instant summary judgment motion, plaintiff has stated:

Plaintiff submits that this Court should decline Defendant's offer to determine this case other than on the merits. As is revealed by the response to the alleged uncontroverted facts, including the facts deemed admitted, Defendant and it's counsel have been aware of the

Plaintiff's denial of those admissions since at least May 12, 2003, as a result of Plaintiff's deposition testimony. By separate motion, Plaintiff requests this Court to grant relief from those matters deemed admitted, so that this case could be decided upon it's merits.

It is not clear what plaintiff meant when he stated that "[b]y separate motion" he sought relief from the matters deemed admitted. No separate motion or pleading has been filed which seeks such relief. Defendant asserts that in our prior order, this court directed plaintiff to file a separate motion to seek relief from the admissions. The court does not find that statement in our prior order.

The court will not deny relief from the admissions merely because a separate motion requesting that relief was not filed. It appears clear to the court from plaintiff's response to the summary judgment motion that plaintiff desires such relief. See *Bergemann v. United States,* 820 F.2d 1117, 1120–21 (10th Cir.1987) (finding that a motion to withdraw was made within a response to a summary judgment motion); see also, In re Durability Inc., 212 F.3d 551, 556–57 (10th Cir.2000).

As cited in our prior order, FED. R.CIV.P. 36(b) provides that "the court may permit withdrawal or amendment [of an admission] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Perhaps defen-

---

1. The requests for admission were as follows: 1) Please admit that race was not a factor in the defendant's decision to terminate your employment; 2) Please admit that defendant has not retained similarly situated white employees who engaged in the same conduct for which you were terminated, to wit, poor per-

formance and insubordination; and 3) Please admit that David Howarter conducted four(4) formal counseling sessions with you while you reported to him during which he advised you how your performance was not meeting the defendant's expectations.

dant has been waiting to make a showing of prejudice until a separate motion to withdraw was filed. It remains that to this point, no such showing has been made. The court shall permit plaintiff to withdraw from the admissions ordered by reason of plaintiff's failure to make a timely response to defendant's requests for admissions. Accordingly, summary judgment will not be ordered on the basis of those admissions.

Summary judgment on the record

The following facts appear to be uncontroverted. Plaintiff is an African American. He began working for defendant, a corporation operating a chain of Outback Steakhouse restaurants, in June 1995 in Oklahoma City. Plaintiff was promoted to the position of kitchen manager in a Topeka, Kansas branch of defendant's restaurant chain in early 2000. This position was also known as the "back of the house" manager. Plaintiff was terminated from the position on January 29, 2001.

David Howarter was the "proprietor" or manager of the Topeka facility starting on April 24, 2000 and ending July 26, 2002. Plaintiff was the kitchen manager when Howarter started. Howarter reported to a "joint venture proprietor" or regional manager, named Randy Brown. Plaintiff reported to Howarter.

The kitchen manager was in charge of the entire kitchen and its operations. Plaintiff was aware when he accepted the job that these duties would require him to work 48 to 55 hours per week. The duties of the kitchen manager included: ordering food; scheduling members of the kitchen staff; keeping food costs at approximately 40%; keeping labor costs for the kitchen area at around 8%; supervising food preparation each day; overseeing the introduction of new food items and relevant staff training for such items; overseeing the development and building the morale of kitchen employees; finding replacement kitchen workers when necessary; assisting and working in any capacity in the kitchen when necessary; and being in charge of running the kitchen. Howarter spoke with Randy Brown during plaintiff's employment about Howarter's concerns regarding deficiencies in plaintiff's performance of these responsibilities. His contacts on these matters increased in October and November 2000. Brown told Howarter that plaintiff should be discharged if his performance did not improve significantly in the near future.

While plaintiff was the kitchen manager, Cindy Nelms was the "front of the house" manager. She was responsible for the parts of the restaurant open to the public. She also reported to David Howarter. She told Howarter that in December 2000, plaintiff ignored her request to stay and prepare certain items such as salad dressing and lettuce to avoid running out of them in the middle of the shift. Between Christmas and New Years Day 2001, it became clear that plaintiff had not ordered a sufficient amount of items such as sirloin, filets and potatoes. Therefore, Howarter had Nelms drive to other Outback restaurants in the region to obtain these food items. Still the restaurant ran out of strip steaks on New Years Day. This caused a financial loss because the restaurant had to "comp" meals to customers. It also damaged customer relations. During January 2001, a line cook walked off the job. While plaintiff may have worked the cook's shift the day he walked off, Nelms and Howarter had to help find employees to work the shift positions left open during the days after the cook left. During the December/January time period, plaintiff spoke to subordinates about his desire to find another job. This was not good for employee morale.

There were months during plaintiff's employment when the food cost and labor

cost goals were not achieved. Nevertheless, the Topeka restaurant's ranking among other Outback restaurants in the region improved while Howarter and plaintiff worked at the restaurant. Plaintiff and other employees of the restaurant received monthly bonuses based on the performance of the restaurant.

Plaintiff was replaced by a Caucasian male after he was terminated.

Legal standards

The well-known standards in this area were summarized in the case of *Kennedy v. General Motors Corp.*, 226 F.Supp.2d 1257, 1261–62 (D.Kan.2002):

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that

does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; accord *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams*, 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

There is no direct evidence of racial discrimination on the record. Therefore, the court must proceed under the McDonnell Douglas framework.

Plaintiff must make a prima facie showing of discrimination by demonstrating that: 1) he belongs to a protected class; 2) he was qualified for his job; 3) he was discharged despite his qualifications; and 4) the job was not eliminated after his discharge. *Kendrick v. Penske Transp. Services Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000). If plaintiff makes this demonstration, then defendant must give a facially nondiscriminatory reason for terminating plaintiff. *Id.* at 1229–30. At that point, plaintiff must present evidence that the reason given for termination is pretextual; otherwise summary judgment may be granted to defendant. *Id.* at 1230. To establish pretext, plaintiff must show either that "a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence ..." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This may be done by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (citations and quotations omitted). Mere allegations are insufficient. Id. at 1324.

In this case the second element of the prima facie case coincides with the issue of pretext, i.e., did plaintiff's performance qualify him to continue working at the restaurant or did it supply a legitimate nondiscriminatory reason for defendant to terminate his employment. Plaintiff contends that material issues of fact regarding his performance should forestall summary judgment.

Analysis

■ Defendant asserts that plaintiff was terminated for poor performance and insubordination. The matter of insubordination involves, mostly, whether plaintiff told his supervisor, Mr. Howarter, that he did not know what he was doing. The court finds that there is an issue of fact as to whether this occurred. Summary judgment shall not be granted on this basis. But, defendant has demonstrated that no material issue of fact exists as to many significant aspects of plaintiff's alleged poor performance or, at least, Howarter's perception of plaintiff's poor performance. Summary judgment is warranted on this grounds.

Plaintiff makes several arguments in an effort to demonstrate that the claim of poor performance was merely a pretext for racial discrimination. For instance, plaintiff contends that he received bonuses for the performance of the restaurant. While this is true, the bonuses were not based upon plaintiff's performance alone, but on the performance of the entire restaurant staff and, we assume, the patronage of the restaurant. The bonuses do not create a material issue of fact as to whether plaintiff's supervisor perceived him to be performing poorly.

Plaintiff claims that Howarter testified in an unemployment compensation hearing that plaintiff had "decent" numbers. But, assuming that plaintiff's account of this testimony is proper evidence, it does not prove pretext because, as plaintiff admitted, Howarter explained in the same testimony that plaintiff did not meet his expectations for the position. Plaintiff also claims that he received no counseling regarding performance issues prior to his termination.[2] This does not demonstrate a

---

2. Defendant claims that Howarter counseled plaintiff at least four times regarding performance issues. But, we accept plaintiff's claim for the purposes of the motion at bar.

material issue of fact regarding Howarter's view of plaintiff's performance. There is no evidence that such counseling was standard procedure for Howarter or the restaurant chain. Furthermore, plaintiff does not dispute the declarations of Cindy Nelms and Randy Brown which demonstrate that Howarter had serious concerns regarding plaintiff's performance. Nor does plaintiff dispute some of the facts which could lead a supervisor of a kitchen manager to have concerns about performance. For instance, plaintiff does not dispute running out of strip steaks on New Year's day. Plaintiff argues that defendant does not deny that plaintiff used the tools available to estimate food needs. But, this does not create an issue of fact as to whether Howarter thought plaintiff used the tools well or whether he thought plaintiff reacted properly when it appeared that the food supply would be inadequate.

Plaintiff asserts that he was not terminated in accordance with the policies of defendant. However, plaintiff has not substantiated what policies were violated or described any standard practices and procedures which defendant failed to follow. Plaintiff has referred to the "fair hearing" provision in the employee handbook. But, this does not demonstrate a failure by defendant to follow regular or ordinary procedures in plaintiff's case.[3]

Plaintiff suggests that Howarter did not have a basis of knowledge to criticize plaintiff's performance because Howarter did not report to work until six or seven hours into plaintiff's shift. This is unpersuasive. Howarter could draw impressions from the reports of others, from statistics accumulated by the restaurant, and from events which occurred while Howarter was at the restaurant, even if plaintiff was not at the restaurant. Plaintiff's responsibilities for what happened at the restaurant as kitchen manager did not always cease at the end of his shift.

Plaintiff asserts that the absence of documentation of his alleged deficiencies is proof of pretext. In some circumstances this might be more persuasive to the court. Here, however, there is no evidence that such documentation was a matter of habit and practice. In addition, there is other evidence of plaintiff's failures from the statements of Randy Brown, Cindy Nelms, David Howarter and the exhibits to their statements.

Finally, plaintiff asserts that evidence of pretext may be drawn from a comparison with Caucasian kitchen managers who were not terminated in spite of poor performance. The Tenth Circuit has recognized that "a plaintiff may ... show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness. An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline.'" *Kendrick*, 220 F.3d at 1232 (quoting *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir.1997)).

In this instance the comparisons drawn by plaintiff do not produce evidence of pretext. Plaintiff has not mentioned another kitchen manager who was supervised by David Howarter and whose performance was similar to defendant's performance. The persons who are mentioned as analogs by plaintiff simply do not fit the bill. They were not supervised by David Howarter and/or they were not kitchen

---

**3.** The "fair hearing" provision states: "**A fair hearing.** Talking to anyone in the company with complete assurance that the individual will be listened to, responded to, and dealt with fairly."

managers and/or their performance was not similar.

 In sum, the record before the court does not reveal a material issue of fact regarding whether defendant, through its agents, was motivated by race to discharge plaintiff from his employment as a kitchen manager. Plaintiff's performance did not satisfy his supervisor's expectations for the position. The law recognizes that it is the supervisor's perception of an employee's performance that is relevant, not the plaintiff's subjective evaluation of his own performance. *Furr v. Seagate Technology, Inc.,* 82 F.3d 980, 988 (10th Cir.1996) cert. denied, 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997). Because plaintiff did not meet his supervisor's expectations for the position, plaintiff was not qualified to continue working as a kitchen manager and defendant had a legitimate nondiscriminatory reason for terminating his employment. There is no issue of fact as to whether many significant performance concerns underlying his supervisor's opinion were unworthy of credence or otherwise a pretext for race discrimination. While plaintiff may have called into question the allegation that he was insubordinate by questioning his supervisor's knowledge or ability to perform the position, this does not discredit the honesty of the supervisor's views regarding plaintiff's performance. Nor does it diminish the significance of those concerns. On the record before the court, we do not believe a reasonable jury could find that defendant was motivated by racial prejudice in terminating plaintiff. Accordingly, the court finds that defendant's summary judgment motion should be granted. See *Russell v. Acme–Evans Co.,* 51 F.3d 64, 69–70 (7th Cir.1995) (questions raised regarding some reasons for adverse employment action do not defeat summary judgment if dissatisfaction with performance remains an honest reason for the action).

**IT IS SO ORDERED.**